UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUILLERMO M.R., | Case No. 25-cv-05436-RFL |
| Petitioner/Plaintiff, | |
| v. | **ORDER DENYING PETITION FOR HABEAS CORPUS AND SCREENING COMPLAINT** |
| SERGIO ALBARRAN, et al., | |
| Respondents/Defendants. | |

On July 17, 2025, Petitioner/Plaintiff Guillermo M.R.'s motion for a temporary restraining order was **GRANTED** on procedural due process grounds, and the government was enjoined from detaining M.R. without notice and a predeprivation hearing before an Immigration Judge ("IJ"). *Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1038 (N.D. Cal. 2025) ("*M.R.*"). On January 23, 2026, a predeprivation hearing was held before an IJ. (Dkt. No. 46 at 605–714.)[1] On February 13, 2026, the IJ issued a decision ordering that M.R. be detained and held without bond on the basis that the government had "shown by clear and convincing evidence that [M.R.] is currently a danger to the community." (*Id.* at 720–21.) On February 14, 2026, M.R. was arrested at his family home by the U.S. Immigration and Customs Enforcement ("ICE") and is currently detained at the California City Detention Facility ("CCDF"). On April 3, 2026, M.R. filed a First Amended Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief. (Dkt. No. 53 ("Amended Petition" or "FAP&C").) M.R. seeks habeas corpus relief on the basis that his detention violates his procedural and substantive due process rights

---

[1] Citations to page numbers refer to ECF pagination.

under the Fifth Amendment.  He also brings civil claims, alleging that he has been denied the right to fully participate in his immigration proceedings because of his disability in violation of Section 504 of the Rehabilitation Act ("Section 504"), and that the IJ's order was arbitrary and capricious under the Administrative Procedure Act ("APA").  M.R. seeks leave to proceed without prepayment of fees with respect to his civil claims.  (Dkt. No. 56.)  For the reasons explained below, the petition for writ of habeas corpus is **DENIED**.  The Section 504 claim is **DISMISSED WITH LEAVE TO AMEND** and the APA claim is **DISMISSED WITHOUT LEAVE TO AMEND**.  This Order assumes the reader is familiar with the facts of the case, the applicable legal standards, and the arguments made by the parties.

   A.  **Petition for Writ of Habeas Corpus**

   ***Habeas Jurisdiction***.  Although the government does not challenge the Amended Petition on jurisdictional grounds, the Court must independently ensure that it has subject matter jurisdiction.  A "core habeas petition[] must be filed in the district of confinement." *Doe v. Garland*, 109 F.4th 1188, 1199 (9th Cir. 2024).  The record reflects that M.R. was detained by ICE at his home in San Jose.  (FAP&C ¶ 69; Dkt. No. 46 at 607.)  At the time of his detention, M.R.'s initial petition was pending.  (Dkt. No. 1.)[2]  Therefore, the Court had and continues to have jurisdiction over the petition, regardless of where M.R. is now detained.  *Mujahid v. Daniels*, 413 F.3d 991, 994 (9th Cir. 2005).  Furthermore, the filing of the Amended Petition did not divest the Court of jurisdiction, because the amendment relates back to the original petition. *See* Fed. R. Civ. P. 81(a)(4) (Federal Rules of Civil Procedure "apply to proceedings for habeas corpus" to the extent not inconsistent with statue); *id.* at 15(c)(1)(B) (permitting relation back of claims arising out of the same "conduct, transaction, or occurrence").  Subject matter jurisdiction exists over the Amended Petition.

   ***Procedural Due Process***.  M.R.'s claim is analyzed under the balancing test set out in *Mathews v. Eldridge*: (i) the private interest, (ii) the risk of an erroneous deprivation and the

---

[2] When he filed his initial petition, M.R. was not detained.  However, the government did not challenge the initial petition on jurisdictional grounds.

value of additional procedures sought, and (iii) the government's interest, including the burdens associated with the additional procedures sought.  424 U.S. 319, 335 (1976).  As previously found, M.R. has a strong liberty interest in being free from custody, and the government has a strong countervailing interest in enforcing immigration laws and protecting the public.  *M.R.*, 791 F. Supp. at 1030–34, 1036.  Now that M.R. has received a predeprivation hearing, the risk of an erroneous deprivation has been sufficiently mitigated and, as explained below, the Court does not find that additional procedures are required under the Due Process Clause at this time.

M.R. argues that the IJ's decision was procedurally deficient in finding him to be a present danger to the community.  He challenges the weight the IJ attributed to police reports, asserts that the IJ mischaracterized certain evidence, and argues that the IJ failed to consider his "current" dangerousness.  The IJ's "dangerousness" determination is reviewed for abuse of discretion.  *See Martinez v. Clark*, 124 F.4th 775, 781–84 (9th Cir. 2024) ("When questions require a close review of agency-found facts, like the 'dangerousness' determination, we review for an abuse of discretion").  Under this standard, a court may not "reweigh evidence." *Id.* at 785.  Furthermore, as the Court has previously found, the Due Process Clause does not require the "government [to] prove that [an individual is] dangerous or [a] flight risk[] by clear and convincing evidence" with respect to "individuals who are subject to discretionary, not mandatory, [immigration] detention," "absent an additional factual showing indicating that such a standard was required by the particular circumstances of the case." *Valencia Zapata v. Kaiser*, 801 F. Supp. 3d 919, 941 (N.D. Cal. 2025) (citing *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1213 (9th Cir. 2022)).[3]

First, M.R. argues that he was not given an opportunity to object to the police reports introduced by the government, and the IJ "proceeded as if [M.R.] were guilty of the charged offenses." (FAP&C ¶¶ 63, 96.)  However, the record reflects that M.R. was represented by

---

[3] That M.R. was previously released pursuant to the *Aleman Gonzalez* injunction, which has now been vacated, does not change the analysis.  Order Vacating Preliminary Injunction, *Aleman Gonzalez v. Bondi*, 18-cv-01869, Dkt. No. 155 (N.D. Cal. Feb. 3, 2026).

counsel and was given the opportunity to testify and to submit evidence.  M.R. does not explain what objections he was prevented from making.  Furthermore, the Court cannot reweigh the evidence the IJ considered to second-guess the IJ's evaluation of its importance or credibility, as long as there was no abuse of discretion in the IJ's application of the legal standard to the facts.

Second, M.R. argues that the IJ's decision contains the following factual errors: (1) that M.R. "struck an arresting officer with a glass bottle" in October 2025, (2) that the three incidents involving the police reflected M.R.'s "increasingly violent" behavior, and (3) that M.R. had "numerous failed recovery attempts" and "hasn't fully complied with his [treatment] protocol in nearly a year." (FAP&C ¶¶ 97–98.)  M.R. is correct that the record does not clearly support that he struck an officer with a bottle.  However, various police reports state that on the night in question M.R. threw a bottle and broken glass at officers, brandished a glass bottle at officers, and that two officers sustained minor injuries while attempting to restrain M.R.  (Dkt. No. 46 at 271–74, 282–83, 291.)  As such, any error was not material to the ultimate determination.  The IJ's characterization of M.R.'s violent behavior as "increasing" was likewise sufficiently supported by the record, given the nature of M.R.'s reported interactions with law enforcement after each incident.  (*Compare* Dkt. No. 46 at 68 *with id.* at 154 *and id.* at 271–74.)  Finally, M.R. acknowledges that the record reflects two "failed recovery attempts" and that he received only sporadic mental health treatment during the past year.  (FAP&C ¶¶ 37–38, 98.)  Therefore, the IJ's description of M.R.'s mental health treatment history is not unsupported.  In sum, the IJ's factual findings do not amount to an abuse of discretion.

Finally, the IJ's determination that M.R.'s "recent criminal activity proves he is a present danger to the community" and that M.R.'s current "treatment protocol, while effective, does not sufficiently safeguard against future criminal behavior" was not an abuse of discretion.  (Dkt. No. 46 at 720.)  M.R. argues that the IJ placed too much emphasis on his criminal conviction more than a decade ago, and discounted the success of M.R.'s then-current treatment protocol and the testimony of his expert witness regarding M.R.'s low likelihood of relapse and recidivism if he continues to engage in treatment.  (FAP&C ¶¶ 60–61, 101–04, 108.)  It was

within the IJ's discretion to weigh the totality of these factors, and the Court is not free to reweigh them.

More generally, M.R. argues that the proceedings were deficient because the IJ was not a neutral decisionmaker.  (FAP&C ¶¶ 110–15.)  However, he points to no specific evidence that the IJ who presided over his hearing and ordered him re-detained demonstrated bias.  To the contrary, the record reflects that the IJ accepted late-filed documents from M.R. and permitted lengthy testimony from M.R. and his expert in a hearing that lasted more than four hours.  (Dkt. No. 46 at 605–713.)  The IJ's reasoning shows that he considered all the evidence in the record before reaching his decision.  Even assuming without deciding the accuracy of M.R.'s critique of the immigration courts as a whole, M.R. has not shown that the IJ failed to act as a neutral arbiter in this case.

In sum, the Court finds that the predeprivation hearing satisfied due process.

***Substantive Due Process***.[4]  Due process requires that "the nature and duration" of detention "bear some reasonable relation to the purpose for which the individual is" detained. *Jackson v. Indiana*, 406 U.S. 715, 738 (1972).  Therefore, when considering a substantive due process challenge to detention, a court must look at both the justifications for detention and the circumstances of detention.  In the context of civil immigration detention, the two regulatory goals of the Immigration and Nationality Act—"ensuring the appearance of aliens at future immigration proceedings" and "preventing danger to the community"—can provide a "special justification" that "outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citations omitted).  But even if some basis for a special justification exists, civil detention is punitive and violates substantive due process "where it is excessive in relation to its non-punitive purpose, . . . or is employed to achieve objectives that could be accomplished in . . . alternative and less harsh methods." *Jones*

---

[4] This Order treats M.R.'s Fifth Amendment Substantive Due Process and Right to Reasonable Health and Safety claims, which are brought together in the same Count seeking release from detention, as a single claim.

*v. Blanas*, 393 F.3d 918, 933–34 (9th Cir. 2004) (cleaned up and citations omitted).

Applying by analogy Ninth Circuit caselaw regarding detention before criminal trial and civil commitment proceedings, a court in this district recently enunciated a five-factor balancing test for determining whether immigration detention violates substantive due process:

> (1) the length of detention and whether it is excessive in relation to its regulatory purpose;
>
> (2) the government's contribution to any delay;
>
> (3) the evidence supporting the determination that detention is warranted to prevent flight risk or community danger;
>
> (4) whether the government interests in ensuring appearance at future proceedings and protecting the community could be protected through alternatives to detention that are less harsh; and
>
> (5) the conditions of detention and how they compare to conductions under which pretrial criminal detainees or people convicted of crimes are held.

*Doe v. Becerra*, 723 F. Supp. 3d 688, 692 (N.D. Cal. 2024) (citing *U.S. v. Torres*, 995 F.3d 695, 708 (9th Cir. 2021); *Jones*, 393 F.3d at 934).  The Court agrees that the framework described in *Doe v. Becerra* appropriately measures the weighty interests at stake in immigration detention, and adopts it here.[5]

As to the first factor, M.R. has spent more than 500 days in detention pending resolution of his immigration proceedings.  (FAP&C ¶ 89.)  That is undisputedly a lengthy detention.  *See Torres*, 995 F.3d at 709 (600-day pre-trial detention was "significant under any metric and [] deeply troubling").  However, when balancing this factor, is it relevant that the bulk of M.R.'s detention occurred in 2022 and 2023, well before the recent incidents involving law enforcement and the IJ's dangerousness determination which provided the basis for M.R.'s current detention. (FAP&C ¶¶ 22, 29.)  Since he was re-detained after an individualized hearing, M.R. has been detained for approximately two and a half months.  Therefore, while the prior period of detention

---

[5] M.R. advocates for the application of tests described in *Jones*, 393 F.3d at 933 and *Gordon v. County of Orange*, 888 F.3d 1118, 1124–25 (9th Cir. 2018).  However, *Jones* and *Gordon* involved 42 U.S.C. § 1983 damages claims.  The balancing test described in *Doe v. Becerra* more accurately weighs the relevant interests in the habeas context.

is relevant to the totality of the circumstances analysis, it does not rise to the same level of significance as 500 days of continuous immigration detention without a bond hearing. *Rodriguez Diaz*, 53 F.4th at 1207 (explaining that in the context of evaluating a petitioner's constitutionally protected interest for a procedural due process challenge "we cannot simply count his months of detention and leave it at that. We must also consider the process he received during this time, the further process that was available to him, and the fact that his detention was prolonged due to his decision to challenge his removal order.").

Regarding the second factor, M.R. does not argue, or submit any evidence, that the length of his detention is the result of government delay.  Therefore, the second factor does not weigh in favor of finding that detention is punitive.  The third and fourth factors support finding that M.R.'s detention is non-punitive.  As already discussed in the procedural due process section, the record contains sufficient evidence to support the determination that detention is warranted. Furthermore, the record indicates that prior to re-detention, ICE employed alternatives to detention—including requiring M.R. to wear an ankle monitor—and that the two most recent incidents involving law enforcement occurred while M.R. was subject to such monitoring. (FAP&C ¶ 46; Dkt. No. 46 at 116.)  Residential treatment also does not appear to be a reasonable alternative to detention.  M.R.'s participation in residential treatment was voluntary, and he previously checked himself out of the treatment facility in August 2025, prior to his third encounter with law enforcement.  (Dkt. No. 46 at 698; FAP&C ¶¶ 52–53.)  Therefore, the record supports the conclusion that there are no reasonable alternatives to detention that provide a sufficient assurance of public safety.

The final factor considers the conditions of detention.  As a threshold matter, the government argues that "prisoners may not challenge mere conditions of confinement in habeas corpus."  (Dkt. No. 54 at 19 (quoting *Nettles v. Grounds*, 830 F.3d 922, 933 (9th Cir. 2016)). However, "[a]n action sounds in habeas no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit . . . *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Pinson v. Carvajal*, 69 F.4th 1059,

1071 (9th Cir. 2023) (emphasis in original and citation omitted). *Pinson* leaves open the question of whether a conditions of confinement claim could be brought in a petition for writ of habeas corpus where the conditions render civil detention punitive in a manner that can only be remedied by release. *Id.* at 1075 & n. 5 (citing *Ziglar v. Abbasi*, 582 U.S. 120, 144–45 (2017)). However, it is not necessary to reach that question in this case. The Amended Petition challenges not only the conditions under which M.R. is being held, but also M.R.'s "lengthy confinement" under those conditions. (FAP&C ¶ 89.) M.R.'s substantive due process claim sounds in habeas.

As to the conditions of confinement, M.R. states that his medical care is constitutionally inadequate. He explains that one of his previously prescribed psychotropic medications has been discontinued and the other is not being administered at the dosage and frequency it was previously prescribed at. (FAP&C ¶¶ 77, 79; Dkt. No. 55-2 ¶¶ 4–6.) He has had extremely limited counseling sessions, which are held in public in his pod. (FAP&C ¶ 78.) Dr. Luis Pérez, who has evaluated M.R. many times including before and after his detention, states that the lack of access to medical care, in combination with other effects of detention itself, is causing M.R. to experience "instrument-validated psychological deterioration across all assessed domains— PTSD, depression, anxiety, panic disorder, and substance use recovery." (*Id.* ¶¶ 38, 53, 82, 126; *see also* Dkt. No. 55-2 ¶¶ 7–8.) M.R.'s lack of access to treatment also complicates M.R.'s efforts to petition for and continue Mental Health Diversion with respect to his pending charges in Santa Clara and Alameda Counties. (FAP&C ¶ 129.) Finally, in addition to inadequate medical care, the Amended Petition asserts that M.R. is confined to a cell without access to television and telephones for "four to twelve hours a day" and that he only spends "five hours per week outside." (*Id.* ¶ 76.)[6]

Weighing all the factors together, M.R. has not shown that he is entitled to release based

---

[6] The petition describes other extremely troubling "[d]ocumented conditions at CCDF" such as use of pepper spray and solitary confinement, sewage in the shower drains, and inadequate food. (FAP&C ¶¶ 70–74.) M.R. does not assert he has personally experienced these conditions.

on his substantive due process claim.  Although he was previously subject to a lengthy period of civil detention, his current detention does not yet raise serious due process concerns, given the intervening events in 2025 that formed the basis for the IJ's dangerousness determination.  And while M.R.'s inadequate access to medical care is deeply concerning, the facts in the record do not yet rise to the level of a constitutional violation necessitating M.R.'s release.  This is particularly true given that M.R. is a member of a provisionally certified class of persons in CCDF custody bringing claims under the Fifth Amendment related to the conditions at CCDF.  Preliminary Injunction and Class Certification Order, *Ruiz v. ICE,* No. 25-cv-09757, Dkt. No. 72 (N.D. Cal. Feb. 10, 2026) ("*Ruiz* Injunction").[7]  The provisional *Ruiz* Injunction requires, among other things, that the government provide "constitutionally adequate health care" at CCDF including "continuity of medical care upon intake and thereafter, including timely completion of active medical orders, access to scheduled provider appointments, and consistent provision of medication; timely access to prescribed medications; and a responsive 'sick call' request system." *Id.* at 3.  An external monitor has been appointed to ensure compliance.  Appointment Order, *Ruiz v. ICE*, No. 25-cv-09757, Dkt. No. 112 (N.D. Cal. Mar. 30, 2026).  Therefore, M.R. is already entitled to injunctive relief aimed at addressing the conditions that he challenges in his Amended Petition.

> **B.      Complaint for Declaratory and Injunctive Relief**

*Combining Actions is Permissible*.  The government argues that M.R. may not bring his civil claims because they do not "sound in habeas." (Dkt. No. 54 at 21–23.)  M.R. responds that he has properly brought his Section 504 and APA claims via his combined civil complaint.  (Dkt. No. 55 at 6–7.)  The Ninth Circuit has not clearly prohibited bringing a combined habeas petition and civil complaint, as M.R. does here.  *See Crawford v. Bell*, 599 F.2d 890, 891 (9th Cir. 1979) (affirming in part a ruling on "a combined civil rights action and petition for a writ of habeas corpus"); *see also*, *e.g.*, *Nettles v. Grounds*, 830 F.3d 922, 936 (9th Cir. 2016) ("[A] district court

---

[7] The case has since been transferred to the Eastern District of California and assigned Case No. 26-cv-2546.

may construe a petition for habeas corpus to plead a cause of action under § 1983 after notifying and obtaining informed consent from the prisoner."). Therefore, M.R.'s civil claims will be considered.

***In Forma Pauperis and Screening***. M.R. seeks leave to proceed without prepayment of fees with respect to his civil claims. (Dkt. No. 56.) The motion is granted. In cases where the plaintiff is proceeding *in forma pauperis*, the Court is required to screen the complaint. 28 U.S.C. § 1915(e)(2). A court must dismiss an *in forma pauperis* complaint before service of process if it is frivolous, fails to state a claim, or contains a complete defense to the action on its face. *Id.* Section 1915(e)(2) parallels the language of Federal Rule of Civil Procedure 12(b)(6) regarding dismissals for failure to state a claim. *See id.* The complaint therefore must allege facts that plausibly establish each defendant's liability. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). In screening M.R.'s pleadings, the Court also considers the arguments made by the government in their response. (Dkt. No. 54.)

***Section 504 Claim***. A Section 504 discrimination claim requires a showing that: (1) the plaintiff has a disability; (2) the plaintiff is "otherwise qualified" to participate in or receive the benefits of a program; (3) the plaintiff was denied participation in or the benefits of a program "solely by reason of his disability;" and (4) the program received federal financial assistance or was conducted by an Executive agency. 29 U.S.C. § 794(a); *Duvall v. County of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001). Discrimination solely by reason of disability occurs when a program "effectively denies otherwise qualified handicapped individuals the meaningful access to which they are entitled." *Alexander v. Choate*, 469 U.S. 287, 301 (1985). M.R.'s Section 504 claim is premised on a failure to accommodate theory: that he was denied access to mental health treatment that would have allowed him to meaningfully participate in preparing for his withholding-only proceedings. (FAP&C ¶¶ 142–45.) M.R. asserts that the reasonable accommodation he is entitled to under Section 504 is release so that he may reenter a treatment facility. (*Id.* ¶ 144.)

The government argues that M.R. has not been denied meaningful access to immigration

10

proceedings because he is represented by counsel.  However, at the pleading stage, M.R. has adequately alleged that due to lack of access to treatment he is experiencing increased paranoia, anxiety, disassociation, and difficulty orienting himself regarding the basic dates and details of his claims, which in turn impedes his ability to meaningfully participate in his immigration proceedings by reviewing declarations or preparing to testify.  (FAP&C ¶ 143.)  The fact that M.R. is represented by counsel does render these allegations implausible.

The government next argues that release is not a reasonable accommodation, and would amount to a fundamental modification.  Identifying an accommodation that is reasonable is the plaintiff's burden, and requires a "fact-specific, individualized analysis of the disabled individual's circumstances and the accommodations that might allow him" to participate.  *Vinson v. Thomas*, 288 F.3d 1145, 1154 (9th Cir. 2002).  In light of the allegations in the pleadings regarding M.R.'s recent interactions with law enforcement, his recent treatment compliance challenges while out of ICE's custody, and the IJ's recent dangerousness determination, M.R. has not plausibly pled that release is a reasonable accommodation for his disability, given the government's interest in public safety.  Therefore, the Section 504 claim is dismissed.  However, M.R. might be able to cure this pleading deficiency by alleging other reasonable accommodations.  Therefore, dismissal of the Section 504 claim is with leave to amend.

*APA Claim*.  The government argues that the relevant statutory scheme prohibits APA arbitrary and capricious review over the "discretionary IJ custody re-determination decision[]." (Dkt. No. 54 at 2 (citing 8 U.S.C. §§ 1226(e), 1252(a)(2)(B)(ii)).)  M.R. responds that APA review remains available pursuant to *Martinez v. Clark*, 124 F.4th 775 (9th Cir. 2024).  *Martinez* addressed the availability of review pursuant to "traditional habeas jurisdiction," not APA review.  *Id.* at 781–2; *see also* 5 U.S.C. § 701(a)(1) (APA does not apply where "statutes preclude judicial review").  And even assuming that APA review were available, M.R.'s arbitrary and capricious claim—which seeks to vacate the IJ's decision—fails for the same reasons discussed above in the Procedural Due Process Section.  The APA claim is dismissed without leave to amend.

## C.     Conclusion

For the forgoing reasons, the petition for writ of habeas corpus is **DENIED** and the preliminary injunction is **DISSOLVED**.  The Motion to Proceed in Forma Pauperis is **GRANTED**.  The Section 504 claim is **DISMISSED WITH LEAVE TO AMEND** and the APA claim is **DISMISSED WITHOUT LEAVE TO AMEND**.  If M.R. believes he can fix the deficiencies identified in this Order concerning the Section 504 claim, he may file an amended complaint by **May 28, 2026**.  M.R. may not add new claims or parties without leave of the Court or stipulation by the parties pursuant to Federal Rule of Civil Procedure 15.

If M.R. files an amended complaint, Defendants' time to answer the amended complaint shall be governed by Federal Rule of Civil Procedure 15(a)(3).  If M.R. does not timely file an amended complaint, the civil claims will remain dismissed, with prejudice, and the case will be closed.


**IT IS SO ORDERED.**

Dated: May 7, 2026

RITA F. LIN
United States District Judge

12